**In re Nadir Erbesler KING, Bouquet Erbesler King, Debtors.**

**Bankruptcy No. 2–86–01503.**

United States Bankruptcy Court, S.D. Ohio, E.D.

Feb. 25, 1987.

David G. Korn, Columbus, Ohio, for debtors.

Richard J. Welt, Columbus, Ohio, for General Motors Acceptance Corp.

Thomas C. Scott, Thompson, Hine and Flory, Columbus, Ohio, Chapter 7 Trustee.

## OPINION AND ORDER ON APPLICATION FOR REDEMPTION

B.J. SELLERS, Bankruptcy Judge.

This matter is before the Court upon an application filed by Nadir and Bouquet King seeking to redeem a 1979 Chrysler New Yorker pursuant to 11 U.S.C. § 722. The application was opposed by General Motors Acceptance Corporation ("GMAC") and was heard by the Court.

The Court makes the following findings of fact. Nadir King ("the debtor") owns a 1979 Chrysler New Yorker ("the Chrysler") which, according to the certificate of title, was purchased on March 8, 1985 for $3,535. On April 18, 1986 the debtor and his wife filed a joint petition under the provisions of Chapter 7 of the Bankruptcy Code. The schedule of creditors filed in their case included GMAC for an obligation evidenced by a note remaining unpaid in the amount of $1,943.20. In connection with that obligation, the debtor granted GMAC a security interest in the Chrysler, and GMAC's lien is noted on the certificate of title for the vehicle. On August 18, 1986 the debtor filed his application to redeem the Chrysler, and while that application was pending, the debtors' discharge was issued by the Court.

The debtor's application, as initially filed, seeks to redeem the Chrysler from GMAC's lien by making a $500 lump sum payment to the creditor. The amount of that proposed redemption payment was orally reduced to $200 during the hearing. The decrease in the debtor's opinion of the Chrysler's value from the $2500 amount reflected in the bankruptcy schedules to the $200 figure currently proposed is attributed to events occurring after the bankruptcy filing. GMAC contests not only the

value attributed to the Chrysler by the debtor, but also the appropriateness of using the date of the redemption request or the date of the hearing on that request as the relevant date for determining the value of the vehicle. GMAC's position is that redemption pursuant to 11 U.S.C. § 722 can be accomplished only if the lienholder receives the value of its collateral as of the date the bankruptcy petition was filed.

The legal issues before the Court are two-fold: determination of the date for measuring the value of the creditor's collateral for purposes of redemption in a pending Chapter 7 bankruptcy case, and adoption of the appropriate standard for such valuation. Once those legal issues have been resolved, the Court will find, as a matter of fact, the value of the Chrysler.

A debtor's right to redeem collateral under the Bankruptcy Code is governed by 11 U.S.C. § 722 which states:

An individual debtor may, whether or not the debtor has waived the right to redeem under this section, redeem tangible personal property intended primarily for personal, family, or household use, from a lien securing a dischargeable consumer debt, if such property is exempted under section 522 of this title or has been abandoned under section 554 of this title, by paying the holder of such lien the amount of the allowed secured claim of such holder that is secured by such lien.

It is not contested in this case that the Chrysler is tangible personal property upon which GMAC has a lien. It also has been established by evidence that the vehicle is used primarily for the debtors' personal or family use. It is unchallenged that whatever obligation remains owing to GMAC on the underlying note in excess of the value of the Chrysler has been discharged, and that neither the debtor nor his wife have any post-bankruptcy personal liability thereupon. The dispute, however, centers upon the additional statutory requirement that the debtor pay GMAC, as the holder of the lien, the amount of its allowed secured claim.

Determination of the amount of an allowed secured claim is governed by 11 U.S.C. § 506(a) which states in pertinent part:

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, ... Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

GMAC's claim in this case, $1,943.20, is the amount asserted to be owing on the underlying note for which the Chrysler serves as security. That claimed amount, pursuant to 11 U.S.C. § 502(a), is deemed allowed unless objected to during the case. A debtors' request to redeem collateral, however, challenges the extent of that claim which will be allowed as secured for the limited purpose of redemption.

Valuation of security in the bankruptcy context within the meaning of § 506(a) is a flexible concept which varies with the purpose for which the valuation is intended. Where the focus is retention of an asset, the valuation process should be consistent with the policy underlying such retention. This Court believes that redemption is provided to enable a debtor, who has the ability to make a lump sum payment, to retain consumer goods which will enable him to implement his fresh start, free from burdensome debt, but equipped with necessary goods. At the same time, the right granted to the debtor to fulfill that purpose must preserve the constitutionally protected property rights of the secured creditor.

Property rights, protected in this country primarily through the substantive due process concepts of the Fifth Amendment to the United States Constitution, include the ability of a secured creditor to repossess and sell its security pursuant to an underlying agreement governed by state law. When a bankruptcy case is filed, exercise of that right is constitutionally delayed un-

til the automatic stay against such action is lifted by specific order, the discharge is granted or denied, or the case is dismissed or closed. *Continental Illinois National Bank & Trust Co. v. Chicago, Rock Island & Pacific Ry. Co.*, 294 U.S. 648, 55 S.Ct. 595, 79 L.Ed. 1110 (1935); 11 U.S.C. § 362(c). However, that relief does not occur simultaneously with the filing of the case, and, realistically, the secured creditor incurs significant delay before it is able to exercise its right to recover and dispose of its collateral. It follows, therefore, that only the value of the collateral, measured by its return on the date of that disposition, is effectively protected as a property right. See *Report of the Commission on the Bankruptcy Laws of the United States*, H.Doc. 93–137, Part II, 131 (1973) ("Commission Report"). Consistent with that reality, the date selected for valuation in a redemption context should be the date which most accurately establishes the same value the creditor would realize had it obtained relief from the stay and abandonment of its collateral from the bankruptcy estate and then proceeded to liquidate that collateral.

Absent objection to the redemption process which requires additional time for hearing before the Court, § 521(2) of Title 11 specifically requires a debtor to exercise his stated intention of redeeming collateral within approximately 75 days after filing his petition in bankruptcy. In the typical Chapter 7 bankruptcy case that time period is comparable to the time it takes for a secured creditor to become aware of the bankruptcy filing, to file its motion for required relief, and to repossess and initiate the process of selling its collateral.

Based upon the foregoing, the Court finds that the later of the date upon which a debtor files his request seeking to establish the amount required to redeem specific collateral or the date upon which such a request, if contested, is heard by the Court, is the relevant date for determining the value of collateral sought to be redeemed. Depreciation or appreciation subsequent to the bankruptcy filing date bears upon the debtor's determination of the feasibility and continuing existence of his desire for redemption and, therefore, that factor is properly reflected in the value ascribed to the secured claim. That rule may be varied, however, if the creditor is able to show undue delay, gross negligence or other acts of the debtor which have unfairly decreased the collateral's value. *Pierce v. Industrial Savings Co. (In re Pierce)*, 5 B.R. 346 (Bankr.D.Neb.1980).

■ Having determined the reference date for valuation, the Court must next determine the appropriate standard to be used for valuing collateral for purposes of redemption. Is that value, as suggested by the Commission Report, the net amount the creditor would be able to apply to its obligation following liquidation of the collateral, or is that value better measured by other delineated standards such as the amount owing or loan, wholesale, liquidation, fair market, retail, or replacement values? Does the standard also depend upon whether the creditor lienholder is in the business of reselling or liquidating goods of the same type? Are some of these "values" different in label, but identical in result?

The language in § 506(a) makes it clear that redemption under the Bankruptcy Code differs from redemption under the Uniform Commercial Code, as enacted in Ohio, in that the Bankruptcy Code's measure is independent of the amount of the debt. Compare Ohio Rev.Code § 1309.49 (Page 1979) with 11 U.S.C. § 506(a). It may be helpful, therefore, to examine the standard used to value collateral in the analogous situation of payment pursuant to 11 U.S.C. § 1325(a)(5) in a Chapter 13 Plan. That standard, determined by reference to what would be obtainable upon a commercially reasonable sale, permits consideration of the age, condition and nature of the particular collateral. *In re Damron*, 8 B.R. 323 (Bankr.S.D.Ohio 1980). Application of that rule generally produces "a middle ground between distressed sale valuation and retail valuation." *Damron* at 326. Absent evidence of deliberate depreciation, that standard is also consistent with the legislative history of § 722. See S.Rep. No. 95–989, 95th Cong. 2nd Sess. 95

(1978), U.S.Code Cong. & Admin.News 1978, p. 5787.

The value obtainable upon a commercially reasonable sale of necessity contemplates reduction of the gross sales price to reflect costs, including necessary repairs, required to produce the sale. That value, however, does not contemplate the circumstances of an auction or forced distressed sale unless the collateral could not be disposed of in any other manner. Such measure also accommodates the consideration of other factors such as the particular position of the creditor and its market access. It hypothesizes a seller similarly situated to the lienholder and a buyer similarly situated to the Chapter 7 debtor. *Catholic Credit Union v. Siegler (In re Siegler)*, 5 B.R. 12 (Bankr.D.Minn.1980). That redemption payment standard, therefore, is not identical to any of the previously enumerated standards. *Siegler* at 14.

■ Upon application of the standard of a commercially reasonable sale, where the seller is the financing arm of a car manufacturer and the debtor is an individual without unusual connections in the car industry, the Court finds that the value of the Chrysler is $600. That finding is based upon examination of the present book values of the vehicle as testified to by GMAC's representative, the debtor's own opinion testimony, consideration of the cost of needed repairs which are alleged to have caused the decline in the vehicle's value since the bankruptcy was filed, and the scheduled value asserted by the debtor when his bankruptcy case was filed in April, 1986. Because of the lack of qualification of GMAC's unavailable agent as an expert and the objection on that basis by GMAC, that appraisal opinion was not considered.

Based upon the foregoing, the debtor's application to redeem the 1979 Chrysler liened to GMAC is sustained upon the debtor's tender to GMAC of $600 within thirty (30) days of the date of the entry of this order.

IT IS SO ORDERED.