**In re Dwayne Andrew RIDNER and Patti Sue Ridner, Debtors.**

**Bankruptcy No. 88–7927–LN.**

United States Bankruptcy Court, W.D. Oklahoma.

March 30, 1989.

Kenneth C. McCoy, Oklahoma City, Okl., for debtors.

Harold D. Boulware, Oklahoma City, Okl., pro se.

Michael H. Freeman, Oklahoma City, Okl., Asst. U.S. Trustee.

## ORDER DENYING CONFIRMATION TO CHAPTER 13 PLAN AND IMPOSING SANCTIONS

PAUL B. LINDSEY, Bankruptcy Judge.

On March 10, 1989, this court entered its order vacating a prior order determining the value of certain secured claims and directing debtors and their counsel to appear before it, to show cause why the court should not enter an order allowing the claim of the creditor in its entirety as a fully secured claim, determining that the security for the claim had a value greater than the amount of the claim, and imposing sanctions upon them under Rule 9011, Fed. R.Bankr.P. That hearing was held on March 28, 1989. Debtors and their counsel were personally present as was the sole proprietor of the creditor, Jewelry Pawn Shop, appearing *pro se*. The Assistant United States Trustee also entered his appearance and participated in the hearing.

At the center of the controversy here are a gold and diamond necklace, a pair of gold and diamond ear studs, a lady's gold and diamond engagement ring and matching wedding band and a man's gold and diamond ring. These items had been scheduled by debtors and given a value of $200. Concurrently with the filing of their petition, schedules and plan, debtors filed several motions seeking orders determining the value of secured claims and voiding liens securing those claims in excess of the value of the property. In the motion regarding the above described jewelry, a determination was sought that it had a value of $200 and that the lien held by Jewelry Pawn Shop securing a debt in the amount of $1,000 should be voided to the extent that it exceeds the $200. An uncontested order was subsequently entered granting the relief sought, and it was this order which was vacated by the court's March 10 order. The sole proprietor of Jewelry Pawn Shop had submitted to the court at an earlier hearing an appraisal by a reputable local jeweler of the items of jewelry in question, showing the same to have an aggregate estimated replacement value of $4,650.

At the March 28 hearing debtor Patti Sue Ridner testified as to the original purchase prices of the items of jewelry, which aggregated $3,628. Her testimony did not indicate when or from whom the jewelry was purchased. She also testified that the necklace, earrings and man's ring had previously been pawned at Jewelry Pawn Shop for $400, but had been redeemed. They were again pawned in August 1988 for $500 and the lady's engagement and wedding ring set was separately pawned for $400. Thus, at the petition date, the debt was $900 plus prepetition interest of $100, according to the creditor's claim. Mrs. Ridner also testified that Mr. Boulware, the proprietor of Jewelry Pawn Shop, had told her that the property was not worth more than $900, that her counsel, Mr. McCoy, had advised her that the proper value for bankruptcy purposes would be a distress or liquidation sale price of twenty-five percent to thirty percent of actual value. This, she indicated, was the basis for the $200 valuation in the schedules, the motion and the plan.

Mr. Boulware testified that the $4,650 appraisal represented the amount which would be required to replace the jewelry with jewelry of comparable quality. He denied having told Mrs. Ridner that the jewelry was only worth $900 and stated that he believed he could get at least $1,800 for it. He also indicated that he could sell it for $1,200 "today."

Debtors' counsel continued to defend his contention that $200 was the appropriate value for the property, although conceding that it was a "low ball" figure and that Mr. Boulware's attitude when advised of the bankruptcy had "made [him] mad."

■ *In re King,* 75 B.R. 287 (Bankr.S.D. Ohio 1987), is a case involving, *inter alia,* redemption of collateral in a Chapter 7 case under 11 U.S.C. § 722. Considering what the court describes as the analogous situation of payment pursuant to 11 U.S.C. § 1325(a)(5) in a Chapter 13 plan, the court notes that the standard for valuation in that instance was determined by reference to what would be attainable upon a commercially reasonable sale, and that that standard permits consideration of the age, condition and nature of the particular property. The court cites *In re Damron,* 8 B.R. 323 (Bankr.S.D.Ohio 1980), to the effect that the application of that standard generally produces "a middle ground between distressed sale valuation and retail valuation." The court then notes that absent evidence of deliberate depreciation, that standard is also consistent with the legislative history of § 722. In the case before it, the court then stated:

> The value obtainable upon a commercially reasonable sale of necessity contemplates reduction of the gross sales price to reflect costs, including necessary repairs, required to produce the sale. That value, however, does not contemplate the circumstances of an auction or forced distressed sale unless the collateral could not be disposed of in any other manner.

It is this court's opinion that the standard described in *King* and *Damron* is entirely appropriate. In view of this determination, and further in view of the fact that no authority has been presented in support of the contention of debtors' counsel that a distress or "fire" sale standard would be more appropriate, the commercially reasonable sale standard will be adopted and employed by this court.

This court has no difficulty determining that, as a general rule, pawn brokers do not loan against property an amount equal to or in excess of what they believe they could ultimately realize from it. As has been noted above, the pawn broker in question here loaned a total of $900 against the property in August 1988. He stated that he believed he could realize at least $1,800 from the property in a reasonable period of time by displaying the same in his shop, and that if necessary, he could sell it for $1,200 "today," presumably in a distress-type sale.

■ It is this court's opinion that the value of the property in question here, determined in accordance with the standard announced in *King,* and *Damron, supra,* is *at least* $1,800 and that therefore the claim of Jewelry Pawn Shop, in the amount of $1,000 is fully secured. In view of that determination, the court declines to confirm debtors' Chapter 13 plan in its present form, in which it is proposed to pay to Jewelry Pawn Shop only $200 plus interest. Debtors will be granted 20 days from the date hereof within which to amend their plan in a manner not inconsistent with this order, should they choose, and be able, to do so.

■ Counsel for debtors, at the March 28, 1989, hearing, has asserted that he accepts full responsibility for the matters in question here, even though the petition and schedules are documents executed by debtors. The court is of the view that debtors themselves should not be sanctioned for the under valuation which the court has found in this instance, and that they were innocent of any wrongdoing in connection with the petition, schedules or plan. It is the court's further view, however, that debtors' counsel has failed to live up to the standards imposed upon him under Rule 9011, Fed.R.Bankr.P. Under that rule, counsel's signature on a document "constitutes a certification that the attorney ... has read the document; that to the best of the attorney's ... knowledge, information, and belief, formed after reasonable inquiry it is well grounded in fact and is warranted by existing law...."

Although, as counsel states, neither debtors nor counsel had or could obtain possession of the jewelry in order to have it appraised, there is no indication whatever that any such action was attempted or

would have been undertaken had it been possible. As the court noted in its March 10 order, "not even the most unsophisticated of observers could read the description of any one of the four pieces of jewelry in question here without concluding that its value was substantially in excess of $200."

The filing of motions such as these containing unsupported and unsupportably low values, with whatever motivation, must be discouraged. This court does not intend to knowingly be made a party to a "game" in which debtors file pleadings containing valuations which they know, or should know, cannot be sustained in the event of litigation. Counsel indicated that he considered the valuations in these motions as simply a starting point for negotiations and compromise between debtors and their creditors. The fact is, however, that the vast majority of these motions are uncontested and orders granting the relief sought, at the unrealistically low values, are invariably submitted by counsel with no qualms whatever. Since counsel in this instance admittedly made no inquiry whatever as to the value of the property other than to substantially "mark down" the amount which had been loaned against the property by the pawn broker, it is appropriate that sanctions be imposed to discourage this practice in the future.

■ Recognizing that reasonable minds may always differ as to issues of valuation, this court believes that the appropriate sanctions in this case should be in the amount of fifty percent of the difference between the value ascribed to the property in the motion, $200 and the minimum value found by the court to be appropriate, $1,800.

Fifty percent of the difference between these figures, $1,600, is $800. Counsel for debtors shall, within five days of the date hereof, pay to Jewelry Pawn Shop from his own funds, the sum of $800, which amount is found by the court to be reasonable compensation for the expense and inconvenience incurred and experienced because of the filing of the motion and the necessity of litigation of the understated value contained therein. Counsel shall provide evidence of such payment to the court when it

has been accomplished. Since Jewelry Pawn Shop was not represented by counsel, it is not appropriate that an attorney's fee be awarded as well.

■ By imposing sanctions in this case, the court does not intend to imply that sanctions are appropriate in every instance where the court's ultimate determination of value differs from that asserted by counsel in his motion. Any such result would be entirely inappropriate in the vast majority of cases. Here, however, the value ascribed to the property by debtors and their counsel bore no reasonable relationship whatever to any value the court could have found from the evidence presented to it. Further, there was no contention that the attorney made any inquiry whatever, reasonable or otherwise, as to the value of the property and it therefore cannot be contended that he believed it was well grounded in fact or warranted by existing law, as is required by Rule 9011. In these circumstances, sanctions are not only appropriate, but necessary in the interest of justice and the proper administration of cases such as these.

IT IS SO ORDERED.