**In re Emma M. PENICK, Debtor.**

**Bankruptcy No. ST 94–81035.**

United States Bankruptcy Court, W.D. Michigan.

Aug. 9, 1994.

Paul I. Bare, Traverse City, MI, for debtor Emma M. Penick.

Timothy J. Abeska, South Bend, IN, for GMAC.

# MEMORANDUM OPINION AND ORDER REGARDING APPROPRIATE VALUATION STANDARD FOR REDEMPTION

JO ANN C. STEVENSON, Bankruptcy Judge.

Emma Marie Penick ("Debtor") filed her voluntary Chapter 7 petition on March 8, 1994. On April 25, 1994 the Debtor filed her motion to redeem a 1989 Geo Spectrum on which General Motors Acceptance Corporation (GMAC) is owed $4,465.07. Debtor claims that the vehicle is only worth $800 and seeks to redeem it for that amount. GMAC asserts that $800 is not a fair price for the car and asks this Court to determine that the fair market value of the vehicle falls somewhere between its wholesale and retail price. A hearing was held on the Debtor's motion to redeem on July 21, 1994 and the Court took the matter under advisement. The following constitutes the Court's findings of fact and conclusions of law.

This proceeding arises in a case referred to this Court by the Standing Order of Reference entered in this district on July 24, 1984 and is determined to be a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K) and (O). Accordingly, this Court is authorized to enter final judgment subject to the right of appeal provided by 28 U.S.C. § 158(a).

The issue presented is one of first impression for this Court: to wit, the value of Debtor's vehicle for redemption purposes under 11 U.S.C. Sections 506(a) and 722. Unaware of a controlling standard or methodology for determining such valuation, the Court will consider those methods employed by courts in other jurisdictions.

Section 722 allows an individual debtor to redeem certain tangible personal property from liens securing dischargeable consumer debts if the property is exempted under section 522 or has been abandoned under section 554, by paying the lienholder the amount of the allowed claim secured by the lien.[1] The sole method of redemption

---

1. 11 U.S.C. § 722 provides:
   An individual debtor may, whether or not the debtor has waived the right to redeem under this section, redeem tangible personal property intended primarily for personal, family, or household use, from a lien securing a dischargeable consumer debt, if such property is exempted under section 522 of this title or has . been abandoned under section 554 of this title, by paying the holder of such lien the amount of

available to the Debtor is lump-sum redemption. *In re Bell,* 700 F.2d 1053, 1055 (6th Cir.1983). Redemption of secured collateral may not be achieved through installment payments. *Id.*

Although Section 722 is facially silent as to the mechanics of redemption, it provides some guidance as to how to value a redemption claim. For instance, it allows for redemption of an "allowed secured claim," which is defined in § 506(a) as "the value of such creditor's interest in the estate's interest in .. property." The determination of that value is to be made "in light of the purpose of the valuation and of the proposed disposition or use of" the property. 11 U.S.C. § 506(a). Determining this purpose is essential to ascertaining a fair price for the vehicle in question.

■ The Court realizes that value is not a narrow term which can rigidly be applied under the same standard in all cases for all purposes. *In re Damron,* 8 B.R. 323, 325 (Bankr.S.D.Ohio 1980). Rather, courts are called upon to determine value on a case-by-case basis in light of the purpose of the valuation and the proposed disposition or use of the subject property. H.R.Rep. No. 595, 95th Cong., 1st Sess. 356 (1977), reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 6312. This expansive language allows the Court the latitude to look at a variety of methods for valuing property in redemption proceedings.

■ When valuing the retention of assets, the Court believes it must consider both the interests of the debtor and the creditor. Redemption permits the Debtor to retain consumer goods while implementing her fresh start by reducing burdensome debt to one payment of something less than the contractual amount owed. Concomitant with this privilege is the protection of GMAC's security interest in its collateral. The proper standard of valuation must weigh each of these concerns.

■ The Court found the analysis in *In re Waters,* 122 B.R. 298 (Bankr.W.D.Tex. 1990) particularly helpful. The *Waters* court divided the different approaches to valuation into the following three categories: 1) the lesser of the secured claim or the fair market value of the collateral (greatest return to the creditor); 2) the liquidation value (fire sale standard); and 3) the value yielded by a commercially reasonable disposition of the property. 122 B.R. at 300. The *Waters* court concluded that the reasonable commercial disposition standard was preferable. We concur with this conclusion and reasoning.

■ Few courts have endorsed the liquidation standard for valuing redemption claims. In *In re Walsh,* 5 B.R. 239 (Bankr. D.C.1980) the Court determined that "value" should be assessed by the fair market value of the asset. Taking into consideration the usual and accepted meaning of fair market value in the liquidation context and the goals of the Code as a whole, *Walsh* held that the fair market value term in § 522 is the equivalent of the liquidation value. This method relies on the equitable notion that if the value is set at a price that the debtor cannot reach then the right to redeem becomes meaningless. *In re Carroll,* 7 B.R. 907, 909 (Bankr. D.Ariz.1981). While it is true that the purpose of § 722 is to allow the debtor to avoid having to pay the replacement cost, i.e., the retail value, of the property subject to the creditor's lien,[2] Courts have considered the liquidation approach unacceptable since it creates a new "bankruptcy market" specifically for purposes of exemption or redemption. Having a separate market for valuation would encourage individuals to use bankruptcy specifically to write down consumer debts and could make consumer debt prohibitively expensive. *In re Mitchell,* 103 B.R. 819 (Bankr.W.D.Tex.1989).[3] Like the *Waters*

the allowed secured claim of such holder that is secured by such lien.

**2.** *See generally* H.R.Rep. No. 595, 95th Cong., 1st Sess. 380–381 (1977).

**3.** Although GMAC testified at the July 21 hearing that if it were to repossess Debtor's automobile it

would sell it at auction, the Court still believes that the public policy argument against using a liquidation standard of valuation is sound. Regardless of how GMAC ultimately disposes of a vehicle, public policy favors preserving the dignity of the market and the bankruptcy process.

court, this Court believes that *Walsh* inequitably favors the interest of the debtor, ignoring the balancing of interests contemplated by § 722.

The analysis in *Walsh* also reveals the weakness of valuing redemption claims under a fair market standard, to wit, how is the Court to determine fair market value? The Sixth Circuit, in dicta, has endorsed the fair market value standard. In *In re Bell, supra,* Judge Krupansky wrote that § 722 "[g]enerally permits a debtor to redeem personal property by paying the creditor the approximate fair market value of said property, or the amount of the claim, whichever is less." 700 F.2d at 1055. In a footnote, the Court focused on the language in § 506(a) that says a secured creditor's claim should be determined by looking at the proposed disposition or use of the property. The Court then reasoned that since the most likely use in most cases is a sale for the benefit of the creditor, the value generally should approximate the market value of the property at the time of sale. *Id.* at f.n. 3. Unfortunately, *Bell* provided little additional guidance as to how to determine the appropriate fair market value of the property in question.

█ This Court will apply a fair market value standard to the present case as well. Not only has the Sixth Circuit endorsed this standard, but the legislative history of § 722 indicates that fair market value is the proper method for redeeming property. S.Rep.No. 989, 95th Cong., 2d Sess. 95 (1978). The Court believes it necessary, however, to provide more specific guidelines for determining the amount for which the Debtor may redeem her car.

█ Initially, we emphasize that an agreeable determination of value requires a balancing of both parties' interests. An excessively high valuation would increase the burden the Debtor must bear in redeeming her car, while an excessively low valuation would penalize GMAC by denying it the benefit of its contract. *In re Hawkins,* 136 B.R. 649 (Bankr.W.D.Va.1991). Several courts have recently attempted to strike this bal-

ance by applying a standard of commercially reasonable disposition of the property by the lender. *See In re Ridner,* 102 B.R. 247 (Bankr.W.D.Okla.1989); *In re King,* 75 B.R. 287 (Bankr.S.D.Ohio 1987); *In re Damron, supra* at 325–26; *In re Waters, supra* at 301.

As one of the courts held:

This admittedly imprecise standard give courts flexibility to consider not only factors affecting the property itself, such as age, condition, and nature of collateral, but also tends to take into account the nature of the creditor's business and the way in which such property is normally disposed of in that business when the collateral is disposed of by the creditor. The net outcome is often a middle ground between retail valuation and distressed sale valuation.

*Waters, supra* at 301 *quoting Damron,* 8 B.R. at 325.

█ As of the date of petition, the "blue book" retail valuation of a 1989 Geo Spectrum was $3,775.00 and the wholesale blue book value as of that date was $2,600.00. The Court believes that the wholesale fair market price of the automobile is the more appropriate price for redemption purposes since it does not include recovery of overhead and profits.[4]

Bankruptcy Commission's report also indicates that a wholesale market value standard should be applied to redemption valuations. That report said that property should be valued at a "net amount" reflecting what a creditor would receive if it were to repossess and dispose of it. Commission on the Bankruptcy Laws of the United States Report, H.R.Doc.No. 137, 93rd Cong., 1st Sess., Part II, p. 131.

█ The Court does not give considerable weight to Debtor's low valuation of the car. The wholesale value of the vehicle does not contemplate the circumstances of a forced distressed sale unless the collateral cannot be disposed of in any other manner. The amount reached by the Court does, how-

---

4. Wholesale market value represents the amount that a particular item, in its present condition, would currently sell at the wholesale level. Wholesale is distinguished from retail in that overhead and sales commissions are removed. *In re McQuinn,* 6 B.R. 899 (Bankr.D.Neb.1980).

ever, accommodate the consideration of other factors such as the particular position of the creditor and its market access. It hypothesizes a seller similarly situated to the lienholder and a buyer similarly situated to the Chapter 7 Debtor. *Catholic Credit Union v. Siegler (In re Siegler)*, 5 B.R. 12 (Bankr. D.Minn.1980). Upon application of the standard of a commercially reasonable sale, and considering that GMAC is the financing arm of an auto manufacturer and the Debtor is an individual with no connections to the automobile industry, it is the Court's opinion that the value of the property in question here, determined in accordance with the standards promulgated in *King, Damron, Ridner,* and *Waters, supra* is $2,600.00.

Based upon the foregoing, the Court finds that the fair market value of Debtor's car, based on a commercially reasonable disposition of the property would yield a sale price of $2,600.00. This is the value that the Court assigns to the lender's interest in the property, and the price which the Debtor must pay to GMAC to redeem her 1989 GEO Spectrum. Unless otherwise agreed to by GMAC, Debtor must pay GMAC $2,600.00 within thirty days of the entry of this order.

IT IS SO ORDERED.