In re George W. DONLEY, Jr., Norma L. Donley, Debtors.

**Bankruptcy No. 97–52432.**

United States Bankruptcy Court, S.D. Ohio, Eastern Division.

March 5, 1998.

Thomas McK. Hazlett, Kinder, Harper, Hazlett & Hinzey, St. Clairsville, OH, for debtors.

Daniel P. Fry, Denise D. Klug, Schrader, Byrd, Companion & Gurley, Martins Ferry, OH, for American General Finance, Inc.

D. William Davis, Bellaire, OH, Chapter 7 Trustee.

### OPINION AND ORDER ON DEBTORS' MOTION TO REDEEM MOBILE HOMES

BARBARA J. SELLERS, Bankruptcy Judge.

This matter came before the Court October 10, 1997, for a hearing on the debtors' motion to redeem a 1976 Lynn Haven Mobile Home and a 1979 Governor Mobile Home for the sum of ten dollars (10.00). American General Finance, Inc. ("American General") opposed the motion and requested the Court to determine the value of the mobile homes for purposes of redemption.

The Court makes the following findings of fact:

George Donley (the "debtor") purchased the two mobile homes in the late 1970's or early 1980's. He paid $1,000 for the one which had suffered fire damage and $800 for the other. He removed the wheels and axles from both trailers and combined the trailers into a double-wide unit. To accomplish this, he added supports and cut their frames to make the unit level.

The unit is situated on land which is co-owned by the debtor's wife and six of her siblings. No written agreement exists with the other siblings to permit the trailers, and it is unlikely that they would agree to allow a non-relative to live in either of the trailers on this real property. Substantial costs would be involved in moving the trailers due to the lack of wheels or axles. Moreover, if separated, each trailer would face extensive repairs, including but not limited to the replacement of an exterior wall.

Kevin L. Clemm has been a vice-manager for American General in its St. Clairsville office since 1994. He approved the original loan to the debtor for $7,700. Under the terms of the loan, American General obtained a security interest in the two trailers. Although Clemm has taken no courses in real estate appraising and is not certified as an appraiser, he is permitted by American General to perform appraisals up to $20,000. In this instance, Clemm appraised the two mobile homes for $8,000.

Clemm later approved a second home improvement loan from American General to the debtor for a new roof. At the time of this loan, Clemm again appraised the trailers at $8,000. Clemm now believes, with the improvements, that the trailers are worth $10,000. For each appraisal, however, Clemm assumed that the trailers would remain in place. Thus, he did not consider what their value would be if the trailers had to be moved.

The debtor agreed with the $10,000 figure provided that the mobile homes remained in place. He testified that their value would be much less if they had to be removed.

The debtor filed his petition under chapter 7 of the Bankruptcy Code on March 19, 1997. At that time, the two mobile homes were

titled in his name subject to the perfected security interest of American General. The debtor, an employee of Wheeling–Pitt, at first indicated his intention to reaffirm the debts, but later changed his mind due to the uncertainty surrounding the Wheeling–Pitt strike. Between the dates of filing of his petition and his motion to redeem, American General received a payment of $1,240 directly from the debtor's union's strike fund.

American General contends that the debtor may redeem the two mobile homes only by making a lump-sum payment of $10,000. On the other hand, the debtor maintains that, in view of the diminished value of the trailers were they to be removed, and the postpetition payment of $1,240, he should be able to redeem them by paying a nominal amount to American General. The Court, therefore, must determine the proper standard for valuing the mobile homes for purposes of redemption and their resulting value under that valuation standard.

A debtor's right to redeem collateral under the Bankruptcy Code is governed by Section 722 which states:

> An individual debtor may, whether or not the debtor has waived the right to redeem under this section, redeem tangible personal property intended primarily for personal, family, or household use, from a lien securing a dischargeable consumer debt, if such property is exempted under section 522 of this title or has been abandoned under section 554 of this title, by paying the holder of such lien the amount of the allowed secured claim of such holder that is secured by such lien.

11 U.S.C. § 722.

The parties do not contest the fact that the mobile homes are tangible personal property which the debtor may exempt or the fact that American General has a valid lien. Since this is a no asset chapter 7 case in which claims were not filed, the amount of any allowed secured claim must be hypothesized. The dispute centers upon the standard of valuation to be used to determine the amount of American General's hypothetical allowed secured claim.

The Sixth Circuit has looked to § 506(a) of the Bankruptcy Code to determine "the amount of the allowed secured claim" which must be paid to the creditor in order for the debtor to redeem the property. *General Motors Acceptance Corp. v. Bell (In re Bell)*, 700 F.2d 1053, 1055 n. 3 (6th Cir.1983). Section 506(a) provides:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

11 U.S.C. § 506(a).

In *Associates Commercial Corp. v. Rash*, — U.S. ——, 117 S.Ct. 1879, 138 L.Ed.2d 148 (1997), the Supreme Court held that the first sentence of § 506(a) merely provides that the value of the collateral is a limitation on an allowed secured claim, as also are the nature and priority of the creditor's claim. It is the second sentence of § 506(a) rather than the first sentence which is instructive about how such an interest is to be valued. *Rash* at —— ——, 117 S.Ct. at 1884–1885. The Supreme Court also held that where a chapter 13 debtor wishes to retain and use collateral pursuant to his plan over the objection of a secured creditor, the value of the secured creditor's interest under § 506(a) is measured by what the debtor would incur to obtain like property for the same proposed use (the "replacement-value standard").

■ Because the debtor in the present case wishes to retain the mobile homes, *Rash* would at first glance seem to govern. Certainly, the *Rash* court's interpretation of the first sentence of § 506(a) is controlling. Were the *Rash* standard as measured by the second sentence of § 506(a) also to apply, the value of American General's secured claim would be $10,000 given the debtor's own testimony. There are reasons, however, to believe that application of the replacement value standard does not reflect the "purpose of the valuation and the proposed disposition

or use of such property" in the context of redemption under chapter 7.

First of all, the legislative history to § 722 supports a valuation standard different from that of replacement value. According to the House report, redemption ... "amounts to a right of first refusal on a foreclosure sale of the property involved. It allows the debtor to retain his necessary property and avoid high replacement costs, and does not prevent the creditor from obtaining what he is entitled to under the terms of his contract." H.REP. No. 95–595, at 127 (1977), reprinted in 1978 U.S.C.C.A.N. 5787, 5913. These comments strongly suggest that Congress, in enacting § 722 as part of the Bankruptcy Reform Act of 1978, intended to place the creditor in the same position it would have been in had the property not been redeemed and the creditor had repossessed and caused a sale of such property. *See* Carlson, "Redemption and Reinstatement in Chapter 7 Cases," 4 *Am.Bankr.Inst.L.Rev.* 289, 306 (Winter 1996).

Prior to *Rash,* it appears to have been the opinion of the Sixth Circuit, expressed in dicta, that a debtor may redeem tangible secured personal property by paying the creditor the approximate fair market value of the property. *Bell,* 700 F.2d at 1055. The Court indicated that fair market value in the context of a redemption contemplated a sale for the benefit of the creditor. *Id.* n. 3; *see also In re Penick,* 170 B.R. 914, 918, (Bankr. W.D.Mich.1994). Therefore, both the legislative history to § 722 and the understanding of the Sixth Circuit before *Rash* support a standard whereby a creditor's allowed secured claim in property to be redeemed is measured by what a sale for the benefit of the creditor would bring or the amount of the creditor's claim, whichever is less.

*Rash* need not change this understanding. As the Supreme Court noted, retention and use of collateral by the debtor in a chapter 13 cramdown exposes the secured creditor to a double risk of future default by the debtor and the deterioration of the property from extended use. —— U.S. at ——, 117 S.Ct. at 1885. In contrast, redemption involves neither of these risks. Therefore, imposition of the replacement value standard is probably inappropriate in redemption cases. *See* Mitsch & Crutchfield, "The Rash Decision: A Question of Value in Context," 16–Aug. *Am.Bank.Inst.J.* 18 (July/August 1997).

Based on the foregoing analysis, this Court determines that American General's allowed secured claim, and therefore its interest in the two mobile homes, should be valued by a standard which measures what American General would receive if the redemption did not occur and it were forced to repossess and to sell the mobile homes in the most beneficial manner it could. The $10,000 value placed on the mobile homes by Clemm, and agreed by the debtor, is irrelevant in this context because both Clemm and the debtor (neither of whom is well-qualified to render an appraisal) assumed that the trailers would remain in place. Under a repossession and resale, this assumption would be false since American General has no interest in the real property on which the mobile homes are located and there is no likelihood that the owners of the real property would consent to the trailers remaining after resale.

The Court is left with little direct evidence as to the actual amount American General would expect to receive from repossession and resale. Guided by common sense, however, the Court believes that given the extensive repairs that would be needed after the mobile homes were removed from the real property where they are, a purchaser would not be expected to offer much money for these mobile homes. There is little reasonable likelihood that such a sale would produce more than $1,250 (the sum of the $1,240.00 postpetition payment by the debtor's strike fund and the $10.00 by which the debtor seeks to redeem).

Based on the foregoing, the debtors' motion to redeem the 1976 Lynn Haven Mobile Home and the 1979 Governor Mobile Home is **GRANTED.** The debtor shall pay the sum of $10.00 to American General within forty-five (45) days of the service of this order. Upon receipt of such payment, American General shall promptly release its liens.

**IT IS SO ORDERED.**