**In re Drema L. WILLIAMS, Debtor.**

**Bankruptcy No. 97–15579.**

United States Bankruptcy Court,
S.D. Ohio,
Western Division.

Aug. 7, 1998.

Michael E. Plummer, Covington, KY, for Debtor.

David D. Donnett, Cincinnati, OH, for Fidelity Financial Services.

## DECISION GRANTING MOTION FOR REDEMPTION

JEFFERY P. HOPKINS, Bankruptcy Judge.

THIS CAUSE CAME on for hearing on the Debtor's Motion for Redemption of a 1990 Chrysler New Yorker, pursuant to 11 U.S.C. § 722 ("Motion") (Doc. 6). The creditor, Fidelity Financial Services, Inc. ("Fidelity") objects on the grounds that the value placed upon the car by the Debtor is below the fair market price of the vehicle as measured by its replacement costs. (Doc. 9). Fidelity contends that *Associates Commercial Corp. v. Rash,* —— U.S. ——, 117 S.Ct. 1879, 138 L.Ed.2d 148 (1997), controls the valuation in a Chapter 7 redemption. The Debtor, on the other hand, seeks to put a much lower value on the New Yorker by averaging the N.A.D.A. wholesale and retail prices to arrive at what amounts to a distressed sale price.

At the hearing scheduled for October 27, 1997, the parties indicated they believed the only issue involved in the case was whether the *Rash* decision applies to motions for re-demption brought under § 722. Instead of having an evidentiary hearing on valuation, the parties agreed that the matter would be submitted to the Court on briefs. The parties further stipulated that the value of the automobile as of the hearing date would be determinative, rather than the value on the petition date. Both parties submitted post hearing briefs which the Court has considered in rendering its decision and order.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the General Order of Reference entered in this district. This is a core proceeding which the Court is empowered to hear and determine in accordance with 28 U.S.C. § 157(b)(2)(A).

■ At issue before the Court is the proper standard for use in determining the value of an asset of the bankruptcy estate sought for redemption by a debtor. Debtor proposes to redeem the 1990 Chrysler New Yorker at a value of $4,335, by taking an average of the N.A.D.A. wholesale and retail prices as of the date of the hearing. However, Fidelity insists that *Rash* requires that in redemption cases debtors must use the replacement value and that "[r]eplacement value is according to the Supreme Court retail value." (Doc. 20). Under this rather restrictive approach, Fidelity asserts that the value of the vehicle is $5,900, which is the N.A.D.A. retail price.

Counsel offers no support for this assertion, nor has this Court found any authority interpreting *Rash* in such draconian terms.[1] Neither party presented further evidence of the value of the vehicle, relying instead on the respective prices stated in the N.A.D.A. book. There is no evidence before the Court as to the condition or mileage of the vehicle or the accessories attached to the car. Moreover, neither party objected to the figures proffered by the other as being inaccurate under the valuation method proposed and the Court will consider these values in its analysis.[2]

---

1. "Whether replacement value is the equivalent of retail value, wholesale value, or some other value will depend on the type of debtor and the nature of the property...." *Rash,* —— U.S. at ——, 117 S.Ct. at 1886, n. 6. With this footnote, the Supreme Court muddied the definition of "replacement value" but it clearly did not intend that "replacement value" automatically equates to the N.A.D.A. retail value without additional consideration by the Court.

2. "Federal Rule of Evidence 801(17), provides that market reports or compilations generally

Section 722 of the Bankruptcy Code provides:

An individual debtor may, whether or not the debtor has waived the right to redeem under this section, redeem tangible personal property intended primarily for personal, family, or household use, from a lien securing a dischargeable consumer debt, if such property is exempted under section 522 of this title or has been abandoned under section 554 of this title, by paying the holder of such lien the amount of the allowed secured claim of such holder that is secured by such lien.

11 U.S.C. § 722 (1998).

In order to determine the redemption value of the vehicle in this case, we first must consider the meaning of the terms "allowed secured claim" appearing in § 722. In this context, "the Sixth Circuit has looked to § 506(a) of the Bankruptcy Code to determine 'the amount of the allowed secured claim' which must be paid to the creditor in order for the debtor to redeem this vehicle." *In re Donley*, 217 B.R. 1004, 1006 (Bankr. S.D.Ohio 1998) (citing *In re Bell*, 700 F.2d 1053, 1055 n. 3 (6th Cir.1983)). Section 506(a) provides:

An allowed claim of a creditor secured by a lien on property in which the estate has an interest, ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

11 U.S.C. § 506(a) (1998).

Prior to *Rash*, the practice observed in this district for determining the disputed value of a motor vehicle for purposes of redemption was to use the midpoint between the N.A.D.A. wholesale (or loan value) and

retail values. *See In re Cox*, No. 95–13575 (Bankr.S.D.Ohio Feb. 6, 1996). However, *Rash* held that in chapter 13 cram down cases, bankruptcy courts may not use a split-the-difference approach when valuating secured property being retained by debtors. The Supreme Court iterated that in chapter 13 cram downs the value of the retained property "is the price a willing buyer will pay to obtain like property from a willing seller." *Rash*, — U.S. at —, 117 S.Ct. at 1884.

The question then becomes what effect, if any, *Rash* has on the local practice of averaging wholesale and retail prices when valuating secured property being redeemed by a debtor in a chapter 7. Recently, Judge Sellers decided a case which concerned this very issue. In *In re Donley*, 217 B.R. 1004 (Bankr.S.D.Ohio 1998), Judge Sellers writes:

Because the debtor in the present case wishes to retain the mobile homes, *Rash* would at first glance seem to govern. Certainly, the *Rash* court's interpretation of the first sentence of § 506(a) is controlling. Were the *Rash* standard as measured by the second sentence of § 506(a) also to apply, the value of [creditor's] secured claim would be $10,000 given the debtor's own testimony. There are reasons, however, to believe that application of the replacement value standard *does not reflect* the "purpose of the valuation and the proposed disposition or use of such property" in the context of redemption under chapter 7.

First of all, the legislative history to § 722 supports a valuation standard different from that of replacement value. According to the House report, redemption ... "amounts to a right of first refusal on a foreclosure sale of the property involved. It allows the debtor to retain his necessary property and avoid high replacement costs, and does not prevent the creditor from obtaining what he is entitled to under the terms of his contract." H.REP. No. 95–595, at 127 (1977), reprinted in 1978 U.S.C.C.A.N. 5787, 5913. These comments

relied upon by the public or by persons in particular occupations are not excluded by the hearsay rule. The NADA Blue Book has been found to fit

within this exception to the hearsay rule." *In re Roberts*, 210 B.R. 325, 330 (Bankr.N.D.Iowa 1997).

strongly suggest that Congress, in enacting § 722 as part of the Bankruptcy Reform Act of 1978, intended to place the creditor in the same position it would have been in had the property not been redeemed and the creditor had repossessed and caused a sale of such property. [Citation omitted.]

Prior to *Rash*, it appears to have been the opinion of the Sixth Circuit, expressed in dicta, that a debtor may redeem tangible secured personal property by paying the creditor the approximate fair market value of the property. *Bell*, 700 F.2d at 1055. The Court indicated that fair market value in the context of a redemption contemplated a sale for the benefit of the creditor. *Id.* 700 F.2d at 1053, n. 3; *see also In re Penick*, 170 B.R. 914, 918, (Bankr. W.D.Mich.1994). Therefore, both the legislative history to § 722 and the understanding of the Sixth Circuit before *Rash* support a standard whereby a creditor's allowed secured claim in property to be redeemed is measured by what a sale for the benefit of the creditor would bring or the amount of the creditor's claim, whichever is less.

*Rash* need not change this understanding. As the Supreme Court noted, retention and use of collateral by the debtor in a chapter 13 cramdown exposes the secured creditor to a double risk of future default by the debtor and the deterioration of the property from extended use. —— U.S. at ——, 117 S.Ct. at 1885. In contrast, redemption involves neither of these risks. Therefore, imposition of the replacement value standard is probably inappropriate in redemption cases. See Mitsch & Crutchfield, "The Rash Decision: A Question of Value in Context," 16–Aug. Am.Bank. Inst.J. 18 (July/August 1997).

Based on the foregoing analysis, this Court determines that [creditor's] allowed secured claim, and therefore its interest in the two mobile homes, should be valued by a standard which measures what [creditor] would receive if the redemption did not occur and it were forced to repossess and

to sell the mobile homes in the most beneficial manner it could.

*In re Donley*, 217 B.R. at 1006–07.

This Court finds Judge Sellers' reasoning in *In re Donley* persuasive and adopts it for purposes of deciding this case. Based on the foregoing, Debtor's motion to redeem the 1990 Chrysler New Yorker is **GRANTED**. Accordingly, within forty-five (45) days of the entry of this Order Debtor shall pay the sum of $4,335 to Fidelity which, in our view, represents the fair market value that the creditor would receive if the redemption did not occur and it were forced to repossess and to sell the car in the most beneficial manner it could. Upon receipt of such payment, Fidelity shall promptly release its liens on the collateral.

**IT IS SO ORDERED.**