In re Cheryl ZELL, Debtor.

Cheryl Zell, Plaintiff/Movant,

v.

Chevy Chase Bank, FSB,
Defendant/Respondent.

No. 02–16662–DK.

United States Bankruptcy Court,
D. Maryland,
at Greenbelt.

Sept. 27, 2002.

Andrew G. Wilson, Annapolis, MD, for Cheryl Zell.

Alan W. Margin, Bethesda, MD, for Chevy Chase Bank FSB.

## MEMORANDUM OPINION

DUNCAN W. KEIR, Bankruptcy Judge.

This case comes before the court upon the Debtor's Motion for Redemption Under 11 U.S.C. § 722 (the "Motion"), the Response of Chevy Chase Bank (the "Response"), and the Reply of the Debtor to the Response (the "Reply").[1] For the reasons stated herein, the court has determined that the appropriate valuation to be applied to the collateral for the purpose of redemption is the wholesale value of $7,275.

The Debtor filed the Motion on June 27, 2002, seeking to redeem a 1999 Dodge Caravan. The Debtor asserted that the allowed secured claim for the purpose of redemption is $7,275. Attached to the Motion was a valuation report with values from the National Automobile Dealers Association ("N.A.D.A.") Official Used Car Guide. Pursuant to the valuation report

1. Hereafter, all code sections refer to the United States Bankruptcy Code found at Title 11 of the United States Code unless otherwise noted.

the wholesale value of the vehicle is $7,275. In its Response, Chevy Chase Bank asserts that the appropriate valuation for the vehicle is the replacement value, which it interprets as the N.A.D.A. retail value of $9,375. The Debtor replied by asserting that the appropriate valuation of the vehicle is the wholesale value.[2]

Although the Debtor and Chevy Chase Bank are in disagreement as to which method of valuation governs, the parties have not raised any dispute to the values under each of these methods. As there is no dispute of fact regarding the valuation amounts, the court finds that an evidentiary hearing would not aid the decisional process. All that remains for the court to decide is the proper valuation method to be employed.

Redemption Agreements are governed by § 722, which provides:

> An individual debtor may, whether or not the debtor has waived the right to redeem under this section, redeem tangible personal property intended primarily for personal, family, or household use, from a lien securing a dischargeable consumer debt, if such property is exempted under section 522 of this title or has been abandoned under section 554 of this title, by paying the holder of such lien the amount of the allowed secured claim of such holder that is secured by such lien.

11 U.S.C. § 722.

■ Pursuant to § 722, to effectuate redemption of the vehicle, the Debtor must pay the amount of the Respondent's claim which is secured by the lien on the vehicle. Section 506 governs the determination of secured status. Section 506(a) provides:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is, an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to set off is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

The Supreme Court in the case of *Associates Commercial Corporation v. Rash*, 520 U.S. 953, 117 S.Ct. 1879, 138 L.Ed.2d 148 (1997) provided guidance regarding the manner in which a creditor's secured claim is valued under § 506(a).

> The first sentence, in its entirety, tells us that a secured creditor's claim is to be divided into secured and unsecured portions, with the secured portion of the claim limited to the value of the collateral. To separate the secured from the unsecured portion of a claim, a court must compare the creditor's claim to the value of "such property," *i.e.,* the collateral. . . . The full first sentence of § 506(a), in short, tells a court what it must evaluate, but it does not say more; it is not enlightening on how to value collateral.

> The second sentence of § 506(a) does speak to the *how* question. "Such value," that sentence provides, "shall be determined in light of the purpose of the

**2.** In the Reply, the Debtor relied upon *In re Benjamin Russell Murray, Jr.*, 2000 WL 33673802 (Bankr.M.D.N.C.2000).

valuation and of the proposed disposition or use of such property."

*Id.* at 961, 117 S.Ct. at 1884–85 (citations omitted). Accordingly, to determine what valuation should be utilized in the redemption concept, the court must commence its inquiry with the purpose of the valuation.

The court finds it instructive to begin with the Congressional intent and purpose in enacting § 722. The House Report which accompanied the Bankruptcy Reform Act of 1978 provided:

> [The right of redemption] amounts to a right of first refusal on a foreclosure sale of the property involved. It allows the debtor to retain his necessary property and avoid high replacement costs, and does not prevent the creditor from obtaining what he is entitled to under the terms of his contract.

H.Rep. 95–595 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6088. *See also, Triad Financial Corp. v. Weathington (In re Weathington),* 254 B.R. 895, 900 (6th Cir. BAP 2000); *In re Donley,* 217 B.R. 1004, 1007 (Bankr.S.D.Ohio 1998); *In re Walker,* 173 B.R. 512, 516 (Bankr.M.D.N.C.1994).

■ As is evident from the language and the legislative history of § 722, the purpose of redemption is to prevent the creditor from repossessing the collateral, and requiring the debtor to pay exorbitant replacement costs. It is in light of this purpose that the court must approach the question of the proper method of valuation of Chevy Chase Bank's claim.

■ Chevy Chase Bank asserts that the proper valuation in this case is the replacement value, which they define as the N.A.D.A. retail value. Chevy Chase Bank

has not set forth any reasoning for this method of valuation other than its citation to *Rash, supra.* However, the methodology or standard of value ("replacement value") laid down by the Supreme Court in *Rash* was not for the purpose of redemption by a debtor in a Chapter 7 case. On the contrary, Debtor argues that the proper method of valuation is the wholesale value, or the N.A.D.A. trade-in value. Debtor asserts that this is the appropriate standard as redemption is distinguishable from the issues in the *Rash* case.

The Sixth Circuit Bankruptcy Appellate Panel held in *Triad Financial Corp v. Weathington* that although the Supreme Court's analysis of § 506(a) is useful, as the determination of valuation in *Rash* was based on "cramdown" in a Chapter 13,[3] it does not apply to Chapter 7 redemption. *See Triad Financial Corp.,* 254 B.R. at 899. In *Rash,* the Court found that if a debtor retains property under the cram down provisions of the code, the creditor is then exposed to further risk. The debtor may default on the payments in the future and the likelihood that the value of the collateral will have dissipated by that point is inevitably high. *Rash,* 520 U.S. at 962, 117 S.Ct. at 1885. It was with this double risk imposed upon the creditor in mind, that the Supreme Court held that the value of the creditor's secured claim was the replacement value of the property.

However, neither of these risks are presented to the creditor in a redemption under Chapter 7. *In re Donley,* 217 B.R. at 1007. In the Chapter 7 redemption context, a creditor is provided a lump sum payment so that a later default will not be possible. *In re White,* 231 B.R. 551, 558

---

**3.** Under the cram down option, the debtor is permitted to retain collateral which is secured by a lien on the property over the objection of the creditor, the creditor retains the lien securing the claim, and the debtor is required to provide the creditor with payments, over the life of the plan, that will total the present value of the allowed secured claim. *See* § 1325(a)(5)(B); *Rash,* 520 U.S. at 957, 117 S.Ct. at 1882–83.

(Bankr.D.Vt.1999), citing *Chrysler Credit Corp. v. Schweitzer (In re Schweitzer)*, 19 B.R. 860, 862–65 (Bankr.E.D.N.Y.1982); *In re Henderson*, 235 B.R. 425, 428 (Bankr.C.D.Ill.1999). Also, as the full redemption value is paid "upfront," there is no risk imposed on the creditor by future deterioration of the vehicle. Accordingly, one of the most significant factors which prompted the Supreme Court to hold that replacement cost is the appropriate valuation in a Chapter 13 cram down is not present in a Chapter 7 redemption.

This court has not located any post-*Rash* decision that holds that replacement value is the appropriate valuation method to be employed in a Chapter 7 redemption.

> After *Rash*, the bankruptcy court decisions addressing the valuation of collateral in the context of a Chapter 7 redemption have recognized that the use and disposition of collateral in the Chapter 7 redemption context is quite different from the Chapter 13 cramdown context. These decisions have thus determined that the replacement value is not an appropriate valuation standard. Rather, these cases conclude that the creditor's allowed secured claim in these circumstances should be determined by the liquidation value, the amount that the creditor would receive if the creditor repossessed and sold the collateral in the manner most beneficial to the creditor.

*Weathington*, 254 B.R. at 899 (citing *Henderson*, 235 B.R. at 425)[4]. *See also In re Dunbar*, 234 B.R. 895 (Bankr.E.D.Tenn.

1999); *In re Williams*, 224 B.R. 873 (Bankr.S.D.Ohio 1998); and *In re Donley*, 217 B.R. at 1004.

Although it is clear that the valuation method utilized should not be the replacement value, that does not end the inquiry of proper valuation under § 722. This court is still faced with numerous methods of valuation from which to choose. However, it is clear to this court, "[w]hatever approach is adopted must seek to balance the competing interests of debtor and lienholder." *In re Waters*, 122 B.R. 298, 300 (Bankr.W.D.Tex.1990) (citations omitted).

Numerous courts have discussed the proper valuation method to be utilized in Chapter 7 redemptions.[5] The court finds the most persuasive of these decisions are those which were rendered after the Supreme Court analyzed the manner in which valuation should occur under § 506(a). Essentially, all of the post *Rash* decisions have held that the proper standard of valuation is the value the secured creditor would receive if it repossessed the collateral and sold it in a commercially reasonable manner. *See In re Ballard*, 258 B.R. 707 (Bankr.W.D.Tenn.2001); *In re Weathington, supra; In re Williams, supra; In re Donley, supra.*

The value Chevy Chase Bank would have received if it had repossessed the vehicle, is the wholesale value of the car. The court in *In re Weathington*, found that "[t]he liquidation value best reflects Congressional intent because the commercial reality is that creditors that repossess vehicles most often sell them wholesale at

---

**4.** The court in *Weathington*, noted that it used the terms liquidation and wholesale valuation interchangeably. *Id.* at 899, n. 1. Both terms refer to the secured creditor's expected recovery upon repossession and sale by auction or other wholesale means.

**5.** *See In re Waters*, 122 B.R. at 298 (discussing the three basic approaches to the issue, Fair

Market Value, liquidation and commercially reasonable disposition.); *Catholic Credit Union v. Siegler (In re Siegler)*, 5 B.R. 12 (Bankr. Minn.1980); *In re Miller*, 4 B.R. 392 (Bankr. S.D.Cal.1980) (finding that the median between retail and wholesale is the appropriate value).

auctions." *Weathington,* 254 B.R. at 900 (citation omitted). *See also,* 6 *Collier on Bankruptcy* ¶ 722.05 (15th ed.2002) ("The wholesale value of the property best approximates the amount that the creditor will lose if the debtor is allowed to retain the property."). As Chevy Chase Bank would not have received the retail value of the collateral if it had repossessed and resold the car, the appropriate valuation method to be applied is the wholesale value of the collateral.

Furthermore, this court concurs with the courts which have found that in regards to valuation for redemption purposes, the terms wholesale, liquidation and foreclosure may be used interchangeably. *See e.g., In re Ard,* 280 B.R. 910 (Bankr. S.D.Ala.2002); *In re Weathington,* 254 B.R. at 899, n. 1. Each of these terms refers to the amount which the secured creditor would expect to recover upon repossession and reasonable commercial disposition of the property. *See id.* The wholesale value is essentially what the creditor would hope to recover if it liquidated the collateral. In other words, if the creditor foreclosed on the collateral, repossessed it and resold the car, it could only hope to recover the wholesale value at best. Due to the overlapping nature of these terms, this court finds it permissible to use them interchangeably in this context.

This court finds that the proper valuation of the collateral pursuant to the Debtor's Motion is the wholesale value. Accordingly, in order to redeem the collateral under § 722, the Debtor must provide Chevy Chase Bank with the wholesale value of $7,275. An appropriate order will be entered.