**In re Laetitia TRIPPLETT, Debtor.**

No. 00 B 31401.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Dec. 28, 2000.

Gus Sparagis, Macey & Chern, Chicago, IL, for Debtor.

Michael L. Sherman, Sherman & Sherman, Chicago, IL, for Creditor.

## MEMORANDUM OF OPINION

EUGENE R. WEDOFF, Bankruptcy Judge.

This Chapter 7 case has come before the court on the debtor's motion to redeem her automobile, pursuant to § 722(a) of the Bankruptcy Code (11 U.S.C.). The motion proposes payment at a midpoint between the retail and wholesale values of the automobile, as set out on an appraisal submitted by the debtor. The creditor holding the lien on the automobile has objected, contending that, in order to redeem property under § 722, the debtor must pay more—either the amount currently due under her contract (without regard to the value of the automobile) or, if payment is limited to the collateral value, then the full replacement (retail) value of the automobile.

For the reasons discussed below, the objection is not well founded. Under § 722 a secured creditor is entitled only to the value of its collateral, and the collateral should be valued on the basis of what the creditor would obtain upon repossession—generally the wholesale value of an automobile. Since the debtor proposes to pay no less than this amount, her motion to redeem must be granted over the objection.

### Jurisdiction

Jurisdiction over bankruptcy cases is placed exclusively in the district courts pursuant to 28 U.S.C. § 1334(a). District courts may refer bankruptcy cases to bankruptcy judges, pursuant to 28 U.S.C. § 157(a), and, by Internal Operating Procedure 15(a), the District Court for the Northern District of Illinois has made such reference. Bankruptcy judges are given the authority to enter appropriate orders and judgments in core proceedings that arise in referred bankruptcy cases pursuant to 28 U.S.C. § 157(b)(1). The determination of the validity, extent or priority of a lien is a core proceeding under 28 U.S.C. § 157(b)(2)(K), and the adjustment of the debtor-creditor relationship is a core proceeding under 28 U.S.C. § 157(b)(2)(O). The court therefore has jurisdiction to enter a final order in ruling on the pending motion.

### Findings of Fact

The relevant facts are brief and undisputed. The debtor in this Chapter 7 case, Laetitia Tripplett, owns a 1996 Buick Skylark, subject to a lien of Ford Motor Credit Corporation ("Ford Credit"), securing a debt owed by Tripplett in excess of $10,000. Tripplett filed her bankruptcy petition on October 26, 2000, and claimed the automobile exempt. On November 6, she filed the pending motion to redeem the automobile. On the same day, Ford Credit moved for relief from the automatic stay, so as to allow it to repossess the automobile.

Attached to Tripplett's motion is an appraisal prepared on October 12, 2000. The appraisal (1) indicates that it is based on a publication of the National Automobile Dealers Association (N.A.D.A.) from October, 2000, (2) lists the retail value of the automobile at $7,000 and the wholesale value at $5,300, and (3) concludes with a $6,100 "mid-point" appraisal (although the actual midpoint of the two values is $6,150). Tripplett's motion proposes to pay Ford Credit this $6,100 value to effect the redemption. Ford Credit has objected to Tripplett's motion on the ground that the proposed payment is inadequate.

Noting no factual dispute, the court took the matter under advisement to allow the parties an opportunity to brief the legal questions raised by the objection.

## Conclusions of Law

Section 722 of the Bankruptcy Code sets out a straightforward procedure for redemption: an individual Chapter 7 debtor may obtain a release of a creditor's lien on certain property—"tangible personal property intended primarily for personal, family, or household use" that has been either exempted or abandoned—by making a payment to the creditor in "the amount of the [creditor's] allowed secured claim."[1] There is generally no difficulty in determining whether property owned by a debtor is subject to redemption; here, Ford Credit has not disputed that Laetitia Tripplett's automobile qualifies. However, there is less clarity about how to determine "the amount of the allowed secured claim" that must be paid by the debtor, and Ford Credit has vigorously disputed the method proposed by Tripplett. Two separate issues are raised by Ford Credit's objection: (1) whether bifurcation under § 506(a) applies to redemption, and, if so, (2) whether the secured portion of the bifurcated claim should be valued according to what it would cost the debtor to replace the collateral (generally its retail value), or by what creditor would receive after repossession (generally the collateral's wholesale value).

### 1. Bifurcation under § 506(a).

■ Section 506(a) of the Bankruptcy Code establishes a process of "bifurcating" secured claims. If a creditor has a claim against the debtor, secured by collateral that is property of the bankruptcy estate, and the value of the collateral is not sufficient to pay the entire claim, then the creditor is treated as having two claims in the bankruptcy case: first, a secured claim, to the extent of the value of the collateral (or, in the language of § 506(a), "the extent of the value of such creditor's interest in the estate's interest in such property") and second, an unsecured claim, to the extent that there is a deficiency in the value of the collateral ("the extent that the value of such creditor's interest [in the estate property] ... is less than the amount of such allowed claim").[2] The phrase "allowed secured claim" appears in several provisions of the Bankruptcy Code, and is generally understood as meaning the claim resulting from bifurcation under § 506(a)—thus, "allowed secured claim" generally includes only that portion of a creditor's total claim that is supported by collateral value. See Dewsnup v. Timm, 502 U.S. 410, 420–22, 112 S.Ct. 773, 780, 116 L.Ed.2d 903 (1992) (Scalia, J., dissenting). However, in Dewsnup, the Supreme Court held that one provision of the Code—§ 506(d)—requires a different meaning of "allowed secured claim." Section 506(d), which provides for lien avoidance to the extent a claim is not an "allowed secured claim," was held by the Court to refer to a claim that is both allowed and secured, so that the phrase encompasses the full claim of a secured

1. The full text of § 722 is as follows:
   An individual debtor may, whether or not the debtor has waived the right to redeem under this section, redeem tangible personal property intended primarily for personal, family, or household use, from a lien securing a dischargeable consumer debt, if such property is exempted under section 522 of this title or has been abandoned under section 554 of this title, by paying the holder of such lien the amount of the allowed secured claim of such holder that is secured by such lien.

2. The full text of § 506(a) is as follows:
   An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

creditor, without the limitation to collateral value resulting from bifurcation under § 506(a). 502 U.S. at 416–18, 112 S.Ct. at 777–78.

Ford Credit argues that the *Dewsnup* holding should apply to redemption under § 722 as well as to lien avoidance under § 506(d). If accepted, this argument would require a debtor to pay the full amount owed to a creditor with a lien on the property sought to be redeemed, regardless of how much that property was worth. For several reasons, this argument cannot be accepted.

First, nothing in the *Dewsnup* opinion requires such a result. The court explicitly limited its decision to the interpretation of § 506(d), noting that it was "express[ing] no opinion as to whether the words 'allowed secured claim' have a different meaning in other provisions of the Bankruptcy Code." 502 U.S. at 416 n. 2, 112 S.Ct. at 777 n. 2.

Second, § 722 would be complete surplusage under Ford Credit's interpretation. If a debtor pays the full amount due to any creditor, the creditor's lien is discharged under nonbankruptcy law. Accordingly, there would be no point in providing a special bankruptcy right of redemption, limited to particular property, if that right required full payment of the underlying debt. *In re Flowers*, 175 B.R. 698, 700 (Bankr.N.D.Ill.1994).

Third, the legislative history makes plain that § 722 was designed to allow redemption by a payment equal to the value of the collateral. The House Report, discussing the language of § 722 as enacted, states that paying "the allowed amount of the creditor's secured claim ... amounts to a right of first refusal on a foreclosure sale of the property involved." H.R.Rep. No. 95–595, at 127 (1977), 1978 U.S.Code Cong. & Admin.News at 5787, 6088. According to the report, this result is intended to avoid the situation of a creditor "us[ing] the threat of repossession, rarely carried out, to extract more

than he would be able to if he did foreclose or repossess." *Id.*

Finally, there appears to be no reported decision adopting Ford Credit's interpretation of § 722, while numerous decisions allow redemption by payment of the allowed secured claim resulting from bifurcation under § 506(a). *See, e.g., In re White,* 231 B.R. 551, 555 (Bankr.D.Vt. 1999); *In re Spivey,* 230 B.R. 484, 488 (Bankr.E.D.N.Y.1999); *In re Lopez,* 224 B.R. 439, 443 (Bankr.C.D.Cal.1998); *In re Williams,* 224 B.R. 873, 875 (Bankr. S.D.Ohio 1998).

*2. Replacement versus liquidation value.*

■ Ford Credit's remaining argument is that, if its "allowed secured claim" must be valued under § 506(a), then the appropriate valuation standard is the "replacement" or retail value of Tripplett's automobile. The sole authority cited by Ford Credit in support of this argument is the Supreme Court's decision in *Associates Commercial Corporation v. Rash,* 520 U.S. 953, 117 S.Ct. 1879, 138 L.Ed.2d 148 (1997).

The Bankruptcy Appellate Panel for the Sixth Circuit recently addressed this argument in *Triad Financial Corp. v. Weathington (In re Weathington),* 254 B.R. 895 (6th Cir. BAP 2000), and, in a persuasive opinion, rejected it—for three reasons:

First, *Rash* is not controlling. The Supreme Court's decision holds that, in valuing a secured claim under § 506(a), the proposed disposition and use of the collateral are of "paramount importance." 520 U.S. at 962, 117 S.Ct. at 1885. In *Rash,* the proposed disposition of the property was cramdown under § 1325(a)(5)(B), through which a Chapter 13 debtor "keep[s] the collateral over the creditor's objection and provide[s] the creditor, over the life of the plan, with the equivalent of the present value of the collateral." *Id.* In this way, "the creditor obtains at once neither the property nor its value and is exposed to double risks: The debtor may

again default and the property may deteriorate from extended use." *Id.* These considerations led the Court to conclude that, in the context of Chapter 13 cramdown, the value of the allowed secured claim under § 506(a) should be the cost that the debtor would incur in replacing the collateral. *Id.* The court contrasted this cramdown situation with the situation of a surrender of the collateral, and stated that § 506(a) should be interpreted in a way that distinguishes these different dispositions, thus implying that liquidation value should be used in the context of surrender and replacement value in cramdown. *Id.* The situation in a § 722 redemption is quite different from cramdown: in redemption, the creditor does receive the immediate value of the collateral, and is subject neither to potential default by the debtor nor to depreciation. Accordingly, the impact of redemption is much closer to surrender than to cramdown, and *Rash* cannot reasonably be read to mandate replacement value in the redemption context.

Second, the legislative history—cited above—indicates that liquidation value, not replacement cost, is the appropriate valuation standard for redemption, by placing the debtor in the position of exercising a right of first refusal at a liquidation sale of the collateral. Indeed, the House Report notes that creditors may take security interests in household goods that have "little if any realizable market value" but "have a high replacement cost" and states that redemption under § 722 "allows the debtor to retain his necessary property and avoid high replacement costs." H.R.Rep. No. 95–595, at 127 (1977), 1978 U.S.Code Cong. & Admin.News at 6088.

Finally, again, there appear to be no reported decisions adopting replacement cost for valuing secured claims in the context of redemption, while numerous decisions have adopted the liquidation standard. *See Triad Fin. Corp. v. Weathington (In re Weathington),* 254 B.R. 895, 899 (6th Cir. BAP 2000) (collecting authorities); *see also* 6 Lawrence

P. King et al., *Collier on Bankruptcy,* ¶ 1722.05, at 722–9 (15th ed. rev.2000) (interpreting § 722 to require liquidation valuation of secured claims).

 In the present case, Tripplett's motion proposes to pay Ford Credit an amount greater than the N.A.D.A. "average trade in" value for her model automobile, and Ford Credit has not contended that it could liquidate the vehicle for more than this amount. Accordingly, the payment proposed in the motion is sufficient to satisfy Ford Credit's "allowed secured claim."

### Conclusion

For the reasons discussed above, the debtor's motion to redeem her automobile is granted. A separate order will be entered, consistent with this decision.