**In re Deborah R. BARSE, Debtor.**

**No. 03–22270.**

United States Bankruptcy Court,
W.D. New York.

Nov. 14, 2003.

Leonard Relin, Rochester, NY, for Debtor.

David L. Rasmussen, Harris Beach LLP, Pittsford, NY, for Creditor.

## DECISION & ORDER

JOHN C. NINFO, II, Chief Judge.

### BACKGROUND

On June 6, 2003, Deborah R. Barse (the "Debtor") filed a petition initiating a Chapter 7 case. On the Schedules and Statements required to be filed by Section 521 and Rule 1007, the Debtor indicated that she: (1) was the owner of a 2001 Kia Sportage EX (the "Kia"), which had been driven 40,200 miles and had a current market value of $7,300.00; and (2) intended to redeem the Kia pursuant to Section 722.[1]

On July 3, 2003, the Debtor made a redemption motion (the "Motion to Redeem") which indicated that: (1) Charter One Automotive Finance ("Charter One") had a purchase money lien on the Kia to secure a claim of $15,916.89, the remaining balance due on the March 22, 2001 Retail Installment Contract; (2) at the time of the purchase of the Kia, it had a price of $22,276.87; and (3) the Debtor proposed to redeem the Kia for $7,300.00, which was the Kelly Blue Book trade-in value, essentially a wholesale value.

Earlier on July 3, 2001, Charter One had filed a Motion for Relief from the Automatic Stay which asserted that: (1) the Debtor had failed to make four monthly

---

1. Section 722 provides that:

> An individual debtor may, whether or not the debtor has waived the right to redeem under this section, redeem tangible personal property intended primarily for personal, family, or household use, from a lien securing a dischargeable consumer debt, if such property is exempted under section 522 of this title or has been abandoned under section 554 of this title, by paying the holder of such lien the amount of the allowed secured claim of such holder that is secured by such lien.

11 U.S.C. § 722 (2003).

payments of $461.96 due under the Retail Installment Contract; and (2) the Kia had an N.A.D.A. retail value of $12,000.00 and an N.A.D.A. trade-in (wholesale) value of $9,775.00.

On July 10, 2003, Charter One filed Opposition to the Motion to Redeem which asserted that the proposed redemption for $7,300.00, representing a wholesale value for the Kia, was inappropriate because the Kia had an N.A.D.A. average retail value of $12,000.00, an average wholesale value of $9,775.00 and an average midpoint value of $10,887.50.

In a Memorandum of Law filed on August 18, 2003 and at oral argument, the Debtor asserted that: (1) once the Court decided the standard for determining value for a Section 722 redemption, the parties could agree upon the redemption value of the Kia without further assistance from the Court; (2) the Court should find that the proper standard for determining value under Section 722 is the foreclosure, liquidation or wholesale value in accordance with the decision of the Bankruptcy Court in *In re Donley*, 217 B.R. 1004 (Bankr. S.D.Ohio 1998) (*"Donley"*), and the numerous other cases which have followed *Donley* since the decision of the United States Supreme Court in *Associates Commercial Corp. v. Rash*, 520 U.S. 953, 117 S.Ct. 1879, 138 L.Ed.2d 148 (1997) (*"Rash"*), including *In re Weathington*, 254 B.R. 895 (6th Cir. BAP 2000) (Rhodes, J.), *In re Tripplett*, 256 B.R. 594 (Bankr. N.D.Ill.2000) (Wedoff, J.), *In re Ard*, 280 B.R. 910 (Bankr.S.D.Ala.2002) (Mahoney, J.) and *In re Zell*, 284 B.R. 569 (Bankr. D.Md.2002) (Keir, J.), (the "Donely Decisions"); and (3) even though the legislative history to Section 722 clearly indicates that Congress intended the right of redemption to amount to a right of first refusal on a foreclosure sale of the property being redeemed: (a) in *Rash* the Supreme Court held that replacement value is the proper standard for determining value when a Chapter 13 debtor retains the use and possession of a motor vehicle and pays that value to a secured creditor through the plan; and (b) the use and continued possession of the same motor vehicle by a redeeming Chapter 7 debtor would be identical to that of a retaining Chapter 13 debtor.

In a Memorandum of Law filed on August 21, 2003, and at oral argument, Charter One asserted that: (1) once the Court decided the standard for determining value for a Section 722 redemption, the parties could agree upon the redemption value of the Kia without further assistance from the Court; (2) the Court should find that the proper standard for determining value under Section 722 is the replacement value in accordance with the decision of the United States Supreme Court in *Rash*, because: (a) under Section 506(a)[2] the disposition or use of the collateral is of paramount importance to the valuation question; (b) when there is a redemption of a motor vehicle under Section 722 there is no contemplated or actual disposition of

---

**2.** Section 506(a) provides that:

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent

that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

11 U.S.C. § 506 (2003).

the vehicle; and (c) the continued use and possession of a motor vehicle is identical for a redeeming Chapter 7 debtor and a retaining Chapter 13 debtor; and (3) the Court should follow the reasoning for a *Rash* replacement value standard under Section 722 set forth in two Law Review articles: (a) David B. Wheeler, *Redemption Under § 722: Possible End–Run Around Rash*, 17 NOV Am. Bankr.Inst. J. 16 (1998); and (b) Kathryn R. Heidt and Jeffrey R. Waxman, *Supreme Court's Rash Decision Fails to Scratch the Valuation Itch*, 53 Bus. Law. 1345 (1998).

## DISCUSSION

In 2003, after the decision of the Supreme Court in *Rash*, I believe that: (1) there are numerous reasons, including those advanced by Charter One, why the standard for determining the value of a motor vehicle being redeemed under Section 722 should be either: (a) its "*Rash* Replacement Value"; or (b) that value discounted by a factor to reflect the additional risk included within a *Rash* Replacement Value because in a Chapter 13 case that value is being paid over time (a "Risk Discounted Replacement Value"); and (2) if there were no legislative history to Section 722, or Bankruptcy Courts, because of the rules of statutory construction, believed that they were not required to consider such legislative history, Bankruptcy Courts would find that the proper standard for determining the value of a motor vehicle being redeemed under Section 722 is not its wholesale, liquidation or foreclosure value, but its *Rash* Replacement or Risk Discounted Replacement Value.

Some of the other more persuasive reasons for a *Rash* Replacement or Risk Discounted Replacement Value are:

1. Section 722 is an independent section of the Bankruptcy Code, referred to only in Section 521 which requires that a Chapter 7 consumer debtor state and implement his or her intention to surrender, reaffirm or redeem secured property. If it was the intention of Congress that property was to be redeemed at its wholesale, liquidation or foreclosure value, as stated in the legislative history, Section 722 could have been simply and specifically drafted that way without in any way affecting the determination of value under other sections of the Bankruptcy Code. Why provide in Section 722 that the debtor must pay the allowed secured claim, which requires an analysis under Section 506 that, even before *Rash*, would not always result in a Bankruptcy Court finding that the standard for determining value was the wholesale, liquidation or foreclosure value;

2. Neither Section 722 nor Section 506(a) is ambiguous, and after the decision of the United States Supreme Court in *Rash*, it is doubtful that most, if any, Bankruptcy Courts, if they determined that they were not required to consider the legislative history to Section 722, would conclude after a Section 506(a) analysis that the standard for determining the value of a motor vehicle being redeemed under Section 722 was its wholesale, liquidation or foreclosure value;

3. The Donley Decisions do not provide a persuasive Section 506(a) analysis that supports a determination that the proper standard for determining the value of a motor vehicle being redeemed under Section 722 is its wholesale value. Those Decisions have essentially ignored Section 506(a) in favor of the legislative history to Section 722.

4. Although the United States Supreme Court in its decision in *Rash* appeared to indicate that: (a) there was a factor in replacement value that represented the increased risk to a secured creditor of having that replacement value paid over time under the Chapter 13 plan, rather

than receiving an immediate cash payment; and (b) this factor was not otherwise compensated for by a combination of the interest that the secured creditor would receive and the timing of the payments to any secured creditors being paid under the plan, it appears to this Bankruptcy Court that evaluating that factor would be impossible. Under the *Rash* Replacement Value standard, every identical model motor vehicle (for example, every 2001 Kia Sportage EX with the same options), once there has been an adjustment for mileage and condition, has the same replacement value, even though some secured creditors might be paid the replacement value over six months and others over fifty-eight months, as in *Rash.* That could be the result of factors including the amount of any particular Chapter 13 debtor's disposable income and the amount of any other secured claims being paid under the plan that would share plan payments on a pro rata basis. As a result, many Bankruptcy Courts might determine that a Risk Discounted Replacement Value is impossible to determine in a Chapter 7 context where there is no plan, and they might simply revert back to replacement value;

5. In many Circuits, such as in the Second Circuit, *See In re Boodrow,* 126 F.3d 43 (2d Cir.1997), notwithstanding Section 521, Chapter 7 debtors are not required to reaffirm or redeem a motor vehicle in order to retain it. Debtors in these Circuits must simply be current on their loan payments at the time they file their petition, and then keep the payments current. This option allows debtors to retain a vehicle for as long as they wish, and when they no longer wish to retain the vehicle, they can simply surrender it to the secured creditor and have no deficiency, since their personal liability on the vehicle loan has been discharged in their Chapter 7 case. Therefore, perhaps the primary

purpose of redemption, to allow a debtor to retain his or her motor vehicle without reaffirming on loans that may have balances far in excess of even the vehicle's *Rash* Replacement Value, does not exist;

6. Today, an increasing number of Chapter 7 consumer debtors are not individuals who have suffered a catastrophic event, such as a divorce, a significant job loss, a major medical problem, or a failed business. They are, by their own admission, overspenders and abusers of far too easy to obtain consumer credit. These overspenders often have late model motor vehicles that have *Rash* Replacement Values of in excess of $20,000.00, but significantly lower wholesale values. When looking at the bankruptcy system as a whole, to many it might appear to make no sense to have a Chapter 13 debtor, who is at least paying something to his or her creditors, having to pay replacement value in order to retain a motor vehicle, and a Chapter 7 overspender consumer debtor, who is paying nothing to his or her creditors, being allowed to refinance an identical motor vehicle for its wholesale value. This is accomplished by obtaining a loan from a relatively new entity that lends to Chapter 7 consumer debtors at high interest rates so that they can redeem their motor vehicle, but apparently only if it can be redeemed at a wholesale value; and

7. Under the Bankruptcy Reform Act as passed by both the Senate and House of the 107th Congress, but not enacted (the "Reform Act"), the Section 506(a) allowed secured claim for secured property acquired for personal, family or household use, would be its replacement value, specifically defined as the price a retail merchant would charge for the property of that kind considering the age and condition of the property at the time the value

is determined.[3]

Notwithstanding these and other reasons that would support some form of a replacement value standard, because I cannot ignore: (1) the clear legislative history to Section 722, which states that redemption "amounts to a right of first refusal on a foreclosure sale of the property involved"; and (2) the reliance on this legislative history by too many of my respected colleagues, I find that the proper standard for determining the value of a motor vehicle being redeemed under Section 722 is its wholesale value, in accordance with the Donley Decisions cited herein.

### CONCLUSION

The standard for determining the value of a motor vehicle to be redeemed under Section 722 is its wholesale value.

**IT IS SO ORDERED.**

---

**3.** Even with this clear statement of value, since the Reform Act does not amend Section 722, if the Act were enacted as passed, parties could still argue that under the Donely Decisions the Section 722 redemption value should be the wholesale value. They could assert that the legislative history to Section 722, which was not amended, overrides any analysis under Section 506, including its new specific value provision.