**In re Jeffrey J. STARK, Sr. and Dawn M. Stark, Debtors.**

**No. 03 B 44701.**

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

July 8, 2004.

---

Michael J. Cunningham, Law Offices of Peter Francis Geraci, Chicago, IL, for Movant/Debtors.

James M. Philbrick, Law Offices of James M. Philbrick, P.C., Mundelein, IL, for Respondent–GMAC.

### MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

These matters come before the Court on the motion for redemption under 11 U.S.C. § 722 filed by Jeffrey J. Stark, Sr. and Dawn M. Stark (the "Debtors"), the response in opposition thereto filed by General Motors Acceptance Corporation (the "Creditor"), and the Creditor's motion in limine to bar the Debtors from entering any evidence into the record. For the

reasons set forth herein, the Court denies the Debtors' motion for redemption without prejudice. The Court grants the Creditor's motion in limine and bars the Debtors from introducing any exhibits into evidence with respect to their redemption motion.

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain these matters pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. They are core proceedings under 28 U.S.C. § 157(b)(2)(A) and (O).

## II. FACTS AND BACKGROUND

The Debtors filed a voluntary Chapter 7 petition on October 31, 2003. The Debtors listed as personal property a 2001 Chevrolet conversion van (the "Vehicle") on their Schedule B with a market value of $20,000.00. Schedule D listed the Creditor as holding a secured claim on the Vehicle in the sum of $38,000.00.

On February 20, 2004, the Debtors filed their motion which seeks to redeem the Vehicle for the sum of $14,500.00 pursuant to a three-page written appraisal and offer to purchase dated December 13, 2003, purportedly made by a certified appraiser from CarMax.[1] See Ex. A to Debtors' Motion for Redemption. The appraisal was based on the Vehicle's mileage, features and accessories, and condition. Id. The appraisal resulted in an "appraisal market value" of $14,500.00 without further elaboration or explanation.

In its response in opposition to the motion, the Creditor denies that the redemp-

tion value is the amount claimed by the Debtors. Instead, the Creditor contends that any redemption of the Vehicle must be made at the "replacement value," which the Creditor alleges is $24,850.00. The Creditor submitted an excerpt from the N.A.D.A. Official Used Car Guide Vehicle Summary N.A.D.A. Values dated March 1, 2004 which shows that the adjusted retail value for the Vehicle is $18,850.00; its trade-in value is $16,100.00; and the loan value is $14,575.00. Creditor Trial Ex. No. 6.

The Court set the Debtors' motion for trial on June 18, 2004. On the day of trial, the Creditor presented its motion in limine which sought to bar the Debtors from entering any evidence into the record at trial, and the Debtors presented their motion to extend the time to respond to the Creditor's discovery requests. The Court summarily denied the Debtors' motion to extend as untimely. The Court took the Debtors' motion to redeem and the Creditor's motion in limine under advisement. The Court will address each motion in turn.

## III. DISCUSSION

### A. The Creditor's Motion in Limine

■ The Creditor alleges that on May 6, 2004, it served certain discovery requests on the Debtors that required responses by June 7, 2004. Creditor Trial Ex. Nos. 3, 4 and 5. According to the Creditor, the Debtors failed to respond to any of the discovery requests, including interrogatories, a notice to produce certain documents and a request to admit facts and genuineness of documents pursuant to

---

**1.** The appraisal/offer should be taken with a grain of salt given the fact that CarMax made an offer to buy the Vehicle and, as a prospec-

tive purchaser, has an economic incentive to lower the value, whereas a truly neutral appraiser would not have such an incentive.

Federal Rules of Bankruptcy Procedure 7033, 7034 and 7036.[2] *Id.*

■ Bankruptcy Rule 7037, which incorporates Federal Rule of Civil Procedure 37, provides various remedies for failure to make or cooperate in discovery, including an order prohibiting the non-responding party from introducing designated matters in evidence. Fed. R. Bankr.P. 7037(b)(2)(B). In addition, Bankruptcy Rule 7036 provides that factual matters are deemed admitted if not specifically objected to or denied within 30 days following service of the request. Fed. R. Bankr.P. 7036(a). Although motions in limine are generally disfavored, *Hawthorne Partners v. AT & T Techs., Inc.*, 831 F.Supp. 1398, 1400 (N.D.Ill.1993), violations of discovery rules warrant appropriate sanctions under Bankruptcy Rule 7037, and are properly imposed here against the Debtors given their complete non-response to the Creditor's legitimate discovery requests. Accordingly, the Court grants the Creditor's motion in limine and bars the Debtors from admitting any exhibits into evidence.

**B.  *The Debtors' Motion for Redemption***

■ Despite the Creditor's unanswered request to admit that replacement value is the appropriate measure of value to be applied to the Debtors' redemption of the Vehicle, the Court reserved ruling on the issue of the appropriate valuation standard to be used under 11 U.S.C. § 722. The amount of the Creditor's allowed secured claim is based on the Vehicle's value and must be determined under § 722, as well as 11 U.S.C. § 506(a).[3] Section 722 provides for a debtor's redemption right and states:

> An individual debtor may, whether or not the debtor has waived the right to redeem under this section, redeem tangible personal property intended primarily for personal, family, or household use, from a lien securing a dischargeable consumer debt, if such property is exempted under section 522 of this title or has been abandoned under section 554 of this title, by paying the holder of such lien the amount of the allowed secured claim of such holder that it is secured by such lien.

11 U.S.C. § 722.

Most significantly, the statutory text of § 722 is silent as to the appropriate standard or measure of value to be used in applying the right of redemption. This silence undoubtedly accounts for the wide variety of approaches used by the courts struggling to apply § 722 and has produced a split of authority among colleagues on this bankruptcy court. *See In re Tripplett,* 256 B.R. 594 (Bankr.N.D.Ill. 2000) (Wedoff, C.J.), and *In re Smith,* 307 B.R. 912 (Bankr.N.D.Ill.2004) (Schmetterer, J.).

Judge Wedoff's learned opinion in *Tripplett* was principally grounded on several

---

2.  The Creditor's request to admit facts and genuineness of documents incorrectly referenced Bankruptcy Rule 7034, which relates to the production of documents. Bankruptcy Rule 7036 speaks to requests for admission.

3.  Section 506(a) provides in relevant part:
    An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim. *Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.*
    11 U.S.C. § 506(a) (emphasis supplied).

points: (1) there is no requirement in the United States Supreme Court's opinion in *Dewsnup v. Timm,* 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992) mandating that its holding regarding 11 U.S.C. § 506(d) necessarily applies in a § 722 redemption; (2) the § 722 redemption right would be virtually meaningless if the debtor were required to pay both the secured portion and the unsecured portion of the creditor's bifurcated claim; and (3) the legislative history of § 722 suggests that redemption at liquidation value by a payment equal to the value of the collateral is allowed. In addition, Judge Wedoff found that the replacement value standard espoused in *Assocs. Commercial Corp. v. Rash,* 520 U.S. 953, 117 S.Ct. 1879, 138 L.Ed.2d 148 (1997) is inappropriate because: (a) *Rash* involved a cramdown in a Chapter 13 case under 11 U.S.C. § 1325(b)(5)(B); and (b) redemption involves immediate payment to the creditor rather than an installment payment over time and thus avoids the risk of potential default by the debtor and continuing depreciation of the collateral and attendant reduction of the security's value.[4] 256 B.R. at 597–98. The result in *Tripplett* follows the general trend of the case law concluding that wholesale or liquidation value of the collateral is the appropriate amount to be paid to the creditor by the debtor in the exercise of his § 722 redemption right. *Id.* at 598.

In noteworthy contrast, Judge Schmetterer's scholarly opinion in *Smith* concludes that *Rash's* replacement value must apply, not wholesale value. 307 B.R. at 921. This conclusion was based on several factors: (1) *Rash* prescribes that the second sentence of § 506(a) mandates that valuation determination hinges on the property's use or disposition which, in most Chapter 13 cramdowns and in Chapter 7 redemptions, as here, contemplates that the debtor keep the vehicle for his personal or household use; (2) *Rash* did not specify that its reading of § 506(a) was strictly limited to Chapter 13 cramdown cases; (3) there does exist in Chapter 7 redemption situations some depreciation in the value of collateral between the point at which the case is filed and the subsequent point at which the redemption price is paid to the creditor; (4) *Rash* expressly discussed, rejected reliance on, and gave no weight to the legislative history of § 506(a); and (5) *Rash* rejected the argument that the increased financial burdens on debtors generally resulting from the higher replacement value employed for § 1325(a)(5) cramdowns involving § 506(a) valuations and should similarly apply in § 722 redemptions.[5] *Id.* at 914–21. Thus, *Smith* concludes that the replacement value established in *Rash* applies to § 722 redemptions, and can be determined by discounting 10 percent from retail value, where no other evidence is presented. *Id.* at 921.

---

**4.** The points concerning the lack of potential future defaults by debtors and the lack of likely future depreciation of creditors' interests in collateral do not necessarily make wholesale value more appropriate than replacement value given the absence of statutory direction.

**5.** The Court respectfully submits that because *Rash* made no reference to § 722, it can be logically inferred that the *Rash* holding should be limited to only § 1325(a)(5) cram-

down situations. Any post-petition, pre-redemption depreciation loss to the creditor can be mitigated, if not avoided, by selecting the value at the date of the debtor's petition rather than the later date (and lower amount) when the redemption price is paid. After all, it is generally the petition date that debtors use to fix values of scheduled assets, and attendant liabilities are then generally computed for allowance of creditors' pre-petition claims under 11 U.S.C. § 502(b).

The Court concludes that its more senior and experienced colleagues have presented compelling arguments in support of their conflicting conclusions. The Court finds merit to both sides of the debate; however, for the following reasons, the Court declines to follow the approaches taken in *Tripplett* and *Smith.* The valuation issue cannot be resolved by resort to either the statutory text of § 722 or its relevant legislative history. Inferring probable legislative intent is especially problematic given the legislative lacuna of the text of § 722, which itself is entirely silent on how the amount of the allowed secured claim is to be valued or what precise measure of value should be used to apply the redemption right. Further, the Supreme Court's opinion in *Dewsnup* is of no assistance because it "express[ed] no opinion as to whether the words 'allowed secured claim' have different meaning in other provisions of the Bankruptcy Code." 502 U.S. at 417 n. 3, 112 S.Ct. 773. Moreover, the *Rash* opinion is not directly on point because the § 506(a) discussion and holding was in the context of construing and applying a Chapter 13 cramdown and it contains no reference to or discussion of a debtor's Chapter 7 § 722 redemption right.

■  Without either binding precedent [6] or precise statutory clarity, the Court is of the view that the recent developments in this district (and probably other bankruptcy courts) regarding the increased exercise of the § 722 redemption provision are worthy of comment and consideration. Until the past several years, there were relatively few § 722 motions filed. The probable and obvious reason is that most Chapter 7 debtors are balance sheet insolvent, and usually have little, if any, liquid cash assets or cash equivalent assets with which to fund, in a lump sum, the exercise of the redemption right.[7]

■  Since the Seventh Circuit's seminal decision in *In re Edwards,* 901 F.2d 1383 (7th Cir.1990), Chapter 7 debtors now have only three options regarding their personal property: surrender, reaffirm under § 524(c) or redeem under § 722.[8] *Edwards* noted that "the debtor may redeem the collateral by paying the creditor the amount of the secured claim or the fair market value of the collateral, whichever is less...." *Id.* at 1385 (footnote omitted). This language begs the narrow question of how to determine fair market value: is it measured at "wholesale," "liquidation," "replacement," "retail," "loan," "trade-in" or some other standard? [9]

---

6. Because neither the Supreme Court nor the Seventh Circuit has ruled on the issue of what valuation measure or standard is applicable for § 722 redemptions, the Court is not bound to follow *Tripplett* or *Smith. See In re McNichols,* 255 B.R. 857, 868 (Bankr.N.D.Ill.2000) ("This Court is not bound by the decisions of other bankruptcy judges in the same district.").

7. As noted in *Smith,* there are now entities willing to fund new post-petition loans to debtors so that they may exercise their redemption rights under § 722 in lieu of reaffirmation under 11 U.S.C. § 524(c). *See* 307 B.R. at 913.

8. A fourth option, retain the collateral and keep current on loan payments, as permitted by the Second Circuit, *In re Boodrow,* 126 F.3d 43 (2d Cir.1997), and the Ninth Circuit, *In re Parker,* 139 F.3d 668 (9th Cir.1998), is not available here. Thus, in this Circuit, Chapter 7 debtors who desire to keep personal property after they file bankruptcy must either consensually reaffirm all or a part of the debt under § 524(c), *see In re Johnson,* 148 B.R. 532 (Bankr.N.D.Ill.1992), or redeem under § 722.

9. In situations involving used cars, this is important and difficult because the value, whichever method selected, is usually less than the debt owed the creditor.

Although the Court has not conducted any statistical analysis of the redemption motions on its docket in recent years, anecdotally the Court has observed that most contested redemption motions have followed a pattern. Typically, the debtor's motion has been predicated on something near wholesale value [10] with supporting appraisal, as in the matter at bar, or a dollar figure from the *Kelley Blue Book*, or a similar market data compilation submitted under Federal Rule of Evidence 803(17). That thrust is usually countered by the creditor's riposte citing to *Rash* and arguing for replacement value based upon a valuation report from the *National Automobile Dealers Association (N.A.D.A.) Guidebook* or a similar publication. In virtually all of these matters, the parties have settled on an agreed upon redemption price for the vehicle somewhere in the middle of the range between the wholesale price and the retail price, either at the time of the debtor's petition or at the time the redemption motion was filed.

The results of most contested redemption motions approximate the holding in *In re Hoskins,* 102 F.3d 311 (7th Cir.1996), *rev'd on other grounds, Assocs. Commercial Corp. v. Rash,* 520 U.S. 953, 117 S.Ct. 1879, 138 L.Ed.2d 148 (1997). *Hoskins* stated that "the usual value of a secured claim in a Chapter 7 bankruptcy is its liquidation value, which normally is its wholesale value...." *Id.* at 313–14. Although *Hoskins* is inapposite because it dealt with the cramdown valuation of a

vehicle in the context of a Chapter 13 plan, the court candidly admitted:

> We get little help from the statute.... "Value" is not defined.... Because that value will differ among the different stages and kinds of bankruptcy, the reference to "purpose" could imply usefully that the section 506(a) standard of valuation is not unitary. Specifically, it may mean something different in a Chapter 13 case from what it means in a Chapter 7 case....

*Id.* at 314. *Hoskins* further noted that the Seventh Circuit:

> hesitate[s] to read section 506(a) as designed to give either the debtor or the unsecured creditors a substantive advantage they would not have if they were trying to enforce their rights outside of bankruptcy. A policy of preferring unsecured to secured creditors, or debtors to either, is contrary to the lodestar that guides the administration of bankruptcy: bankruptcy preserves rather than alters creditors' preexisting entitlements, and merely consolidates their claims in order to prevent a race to dismember the debtor that may make the creditors as a whole worse off.

*Id.* (citations omitted).

*Hoskins* determined that the midpoint of the bargaining range was a reasonable approximation of the likely average valuation of the debtor's automobile.[11] Thus, *Hoskins* held that in Chapter 13 cases

---

**10.** Dictum from the Seventh Circuit indicates that the price obtained in a liquidation sale is usually closer to a wholesale price rather than a retail price. Retail price is simply wholesale, plus the cost of selling at retail and the profit desired by the selling retailer. *In re Ebbler Furniture & Appliances, Inc.,* 804 F.2d 87, 92 (7th Cir.1986) (concurring opinion); *see also In re Hoskins,* 102 F.3d 311, 312 (7th Cir.1996) *(citing Ebbler), rev'd on other grounds, Assocs. Commercial Corp. v. Rash,*

520 U.S. 953, 117 S.Ct. 1879, 138 L.Ed.2d 148 (1997).

**11.** Although the Supreme Court in the *Rash* opinion rejected the *Hoskins* court's valuation method in the context of a Chapter 13 cramdown, the Court finds that rejection of that method of valuation does not preclude this Court from utilizing that method in the context of a § 722 redemption motion. After all, *Rash* made no mention of § 722.

involving automobiles and similar assets, the value of the secured interest is the average of the retail and wholesale value of the collateral. *Id.* at 316. Accordingly, in light of the Court's experience with other § 722 motions, and the persuasive language from the *Hoskins* opinion, the Court concludes that a balancing approach is most appropriate here given the lack of binding precedent or meaningful statutory direction. The average of wholesale and retail values, absent other persuasive evidence, balances the competing interests of both debtors and creditors. A debtor's financial burden is significantly less than paying full retail or discounted replacement value, while the creditor retains a more substantial benefit of its pre-petition bargain with the debtor. Use of a midpoint tends to mitigate the inevitable adverse effects on one side or the other and requires both to share some economic cost and loss.

The approach taken by the Court has the utilitarian advantage of relative ease and minimal expense to the parties through resort to materials readily available to the public and based upon data admissible as evidence under Federal Rule of Evidence 803(17). Thus, resort to such publications as the *Black Book, Blue Book, Red Book* and *N.A.D.A. Guidebook* is appropriate and relatively easy.[12] This pragmatic approach is in keeping with the *Hoskins* view that the midpoint is a natural point to which bankruptcy parties will gravitate if they do not want to waste a lot of time bluffing or haggling or going to the expense and trouble of an actual valuation trial. 102 F.3d at 316. As in *Hoskins,* the result here gives neither party a windfall.

The observation of one noted treatise is aptly consistent with the result reached here by the Court in this murky area of the Bankruptcy Code:

This is particularly troublesome, in that value of property to be redeemed under § 722 is not defined in the Code....

An appropriate standard of valuation would reflect the price that the creditor could have obtained for the collateral after repossession.... [H]owever, that standard is still a fluid concept which leaves the precise amount that the creditor should receive unsettled.

. . .

Overall, an amicable determination of value involves a balancing of the interests of both parties: an excessively high valuation increases the burden the debtor must bear in redeeming its property; an excessively low valuation penalizes the creditor by denying it the benefit of its contract....

. . .

Retail price is generally not appropriate for redemption valuation—unless no private sale market is available—since the retail price includes recovery of overhead and profits. Setting the value at a price which the creditor cannot reach renders the entire process of redemption meaningless, and would overcompensate the creditor and excessively tax the debtor. Thus, the wholesale market value best approximates the value of the property. This method is in accordance with the Bankruptcy Commission's report, which stated that property should be valued at a "net amount" reflecting what the creditor would receive if it were to repossess it and dispose of it.

. . .

Generally, courts consider the liquidation market approach unacceptable

---

12. Which is the most appropriate is another question for a different day.

ble.... In addition, a forced sale valuation causes the creditor to incur the penalty of a liquidation which never occurs.

3 W.L. Norton, Jr., *Norton Bankruptcy Law and Practice 2d*, § 69:7 at pp. 69–9–69–12 (2d ed.1994).

## IV. *CONCLUSION*

For the foregoing reasons, the Court denies the Debtors' motion for redemption without prejudice. The Court grants the Creditor's motion in limine and bars the Debtors from introducing any exhibits into evidence with respect to their redemption motion.

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.

## *ORDER*

For the reasons set forth in a Memorandum Opinion dated the 8th day of July 2004, the Court denies without prejudice the motion of Jeffrey J. Stark, Sr. and Dawn M. Stark for redemption. The Court grants the motion in limine of General Motors Acceptance Corporation and bars Jeffrey J. Stark, Sr. and Dawn M. Stark from introducing any exhibits into evidence with respect to their redemption motion.